No. 470

First Circuit

——

ROMANO v. DAVIDSON

——

(June 28, 1929. Opinion and Decree.)

——

Morgan & Simmons, of Covington, attorneys for plaintiff, appellant.

Miller & Heintz, of Covington, attorneys for defendant, appellee.

ELLIOTT, J. Ernest Romano claims of Wallace Davidson damages to the extent of $900 on account of an automobile collision due, he claims, to defendant's fault, and resulting in the complete destruction of plaintiff's automobile. The collision occurred during the night of April 1, 1928, just out of Abita Springs, on the Covington highway.

The plaintiff's car, a Chevrolet, was being driven at the time by his minor son, Benjamin Romano. He alleges: That his car was forced to a complete stop because of a deflated tire. That his son, in stopping, brought his car to a standstill slightly to the right of the center of the road, facing Covington, with the intention of repairing or changing his tire, leaving more than ample space for any size of car to pass it in the road to the left. That, within a short time after his car was stopped, defendant appeared from the rear, driving a Buick automobile at a reckless speed, estimated at 55 miles an hour, and crashed into him, demolishing his car, despite the fact that he had a clear view from the rear. That the collision was due solely to defendant's gross negligence and his wanton disregard for the rights of others.

Defendant avers, in defense: That, coming out of Abita Springs driving at a slow speed, he noticed a large car in his front, with its lights shining diagonally across the road, and slowed down for the purpose of passing it. That just as he passed it he noticed a Chevrolet on the right-hand side of the road, with no lights showing. That said car came into view so suddenly that it was impossible to avoid striking it. That his car ran against its side without doing any damage. That plaintiff's car had run into said large car just before his arrival on the scene, and had received, in its collision with the large car, all the damage he complained of in his petition.

The case depends on disputed and conflicting statements of fact.

Plaintiff's son was accompanied by a young man friend. His son and this friend were the only witnesses for the plaintiff, who were actually present at the time of his collision.

The defendant had in his car, as companions, two young men besides himself and three young ladies, but only one of the young gentlemen who was with him at the time appeared as a witness in his behalf. But each side called other witnesses to corroborate them as to various facts and circumstances.

The occupants of both automobiles had just left a dance at Abita Springs, and had presumably started homeward. A witness named Pennington, driving out of Abita Springs just in advance of Romano, was passed by the ·big car, called by the witnesses the Lincoln, and almost immediately afterwards he heard a collision between it and plaintiff's car, upon which he stopped and hurried back to the place. He testifies that, in a few minutes after getting back to the scene of the collision between plaintiff's car and the Lincoln, he heard the roar of another car coming, and, fearing there would be another collision, he ran toward it in order to warn it, but its driver, who proved to be defendant, did not heed his warning, and passed him at great speed, and in a moment afterwards struck plaintiff's car with great force.

This witness places himself about 50 yards distant from the collision. His testimony is that he saw it from where he stood in the dark.

Benjamin Romano, plaintiff's son, claims: That, driving at a moderate speed, he had a blow-out which caused a flat tire. That he was slowing down and was just in the act of stopping for the purpose of taking off the flat and putting on an extra tire when he was struck slightly on his left front fender and hubs by the Lincoln car, spoken of by the witnesses as the large car. That the blow from the Lincoln knocked his car into an oblique position, its rear end in the gutter and its front near the middle of the road. That he and his friend got out and were making preparations to prize up his car so as to change tires, when the defendant came up from the rear at about 50 miles an hour and struck him in the rear, sidewise, demolishing his car completely.

Two other witnesses not present at the time, but who arrived soon afterwards, gave corroborative testimony concerning certain facts and circumstances.

Young Mailhorse, in plaintiff's car with his son, says that the Lincoln struck plaintiff's car and knocked off a tire, but he does not speak of a blow-out and slowing down. Mailhorse was not questioned directly on the subject; consequently we take into account that the matter may have been overlooked.

Benjamin Romano testified that his father had paid damages to Michel, the driver of the Lincoln car, on account of the collision, but declared that he did not know the amount his father had paid.

Plaintiff, as witness, testifies that he paid the driver of the Lincoln car $100 to repair his car on account of the collision, and that the amount had been agreed on between his son and plaintiff's wife with the driver of the Lincoln; and, as the amount was paid pursuant to an agreement entered into between his son and the driver of the Lincoln car, the fact tends to weaken confidence in the statement of his son.

It is argued that the impact, when defendant's on-coming car struck the stationary car of the plaintiff, was so terrific, that two of the girls in the Davidson car fainted with fright. In some situations that argument would have weight, but in this case the testimony shows that two of the young men in the Davidson car appeared to be intoxicated, one of them so drunk that he had to be lifted out of the car; yet they had all presumably just left Abita Springs together.

Plaintiff contends that the road was almost straight, that the head and tail lights on his car were showing, and that defendant could have seen his car had he been looking, and passed around it.

Benjamin Romano and his companion testify that the head and tail lights on their car continued to show, after their collision with the Lincoln, and were showing at the time it was struck by defendant. As against this, however, Davidson and his companion, Schumacher, claim: That there were no lights showing on plaintiff's car. That the front end of it was near the center of the road, and that, blinded by the lights on the Lincoln, which they had just passed, they could not see plaintiff's car in the dark. That they were not driving faster than 12 or 15 miles an hour, and struck it so lightly that they could not have done any damage.

The defendant testified that the result of striking plaintiff's car was that one headlight was put out and one fender slightly bent on his car; that the ·cost of repairing his car was only $1.70. His testimony is corroborated by several witnesses, and seems to be a fact. And it seems to be a necessary conclusion that defendant's car could not have struck plaintiff's car so hard that it was demolished otherwise there would likely have resulted a greater damage to the Buick car. The evidence shows that defendant's car proceeded on its way in a few minutes after the collision. Plaintiff's car and the Lincoln could not proceed and were both picked up by a wrecker that night and carried to the same garage. The next morning they both were examined by mechanics. These mechanics say: That the front axle of the Lincoln car was bent, the steering gear injured so that it would not work. That it was seriously injured, and that an injury of that kind could not have been produced on a Lincoln by a Chevrolet car unless they had come together with great force. That the impact required for a Chevrolet to produce such damage to a Lincoln as was done in this case would crush the Chevrolet, owing to the heavier and stronger material and structure of the Lincoln. They further testify that their examination of the Chevrolet showed that its front axle and wheels and other structure were bent backward, showing that it had been demolished by a blow from the front, and not from the rear and side. It was struck in front by the Lincoln and in the side and rear by defendant's car.

The record contains three photographs of the Chevrolet car in the condition it was in after the accident, and it seems to us that these pictures support the testimony of the mechanics.

The burden of proof is upon the plaintiff to show, not only that the defendant was at fault, but he must also show that it was the blow from defendant's car that did him the damage of which he complains in his petition.

The district judge rejected plaintiff's demand, evidently concluding that· the evidence did not sustain plaintiff's claim.

It cannot be satisfactorily concluded from the evidence that defendant was at fault.

But, supposing he was, it then does not appear to be established that it was the blow from defendant's car that caused plaintiff the damage of which he complains.

The judgment appealed from is in our opinion correct.

Judgment affirmed; plaintiff and appellant to pay the cost in both courts.